1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

10 | ABBAS R. MOBINE,

| | CASE NO. 11-cv-2550 – IEG (BGS)

11 | Plaintiff,

| ORDER GRANTING MOTION TO
DISMISS, [Doc. No. 3].

vs.

12 | ONEWEST BANK, FSB, a California
13 | Banking Association; INDYMAC
MORTGAGE SERVICES, a division of
14 | OneWest Bank, FSB; MORTGAGE
ELECTRONIC REGISTRATION SYSTEM,
15 | INC., a Delaware Corporation; ALL
PERSONS UNKNOWN CLAIMING ANY
16 | LEGAL OR EQUITABLE RIGHT, TITLE,
ESTATE, LIEN, OR INTEREST IN THE
17 | PROPERTY DESCRIBED IN THE
COMPLAINT ADVERSE TO PLAINTIFF'S
18 | TITLE, OR ANY CLOUD ON PLAINTIFF;
and DOES 1 through 100,

19 | Defendants.

20

21     Presently before the Court is Defendants OneWest Bank, FSB, IndyMac Mortgage

22 Services, and Mortgage Electronic Registration System, Inc. ("MERS")'s motion to dismiss.

23 Plaintiff filed an opposition, and Defendants replied.  Having considered the parties' arguments,

24 and for the reasons set forth below, the Court **GRANTS** the motion to dismiss.

25                                          **BACKGROUND**

26     Plaintiff Abbas R. Mobine was the owner of real property located at 5817 Bucknell

27 Avenue, La Jolla, CA 92037 ("Property").  He alleges that on or around March 2007, he decided

28 to refinance the Property with Washington Mutual, which promised Plaintiff very favorable terms.

However, approximately a week before the loan was to close, Washington Mutual cancelled the loan due to lending problems it was experiencing.  Subsequently, loan officers from Washington Mutual attempted to find another lender willing to satisfy Plaintiff's lending needs.  They found Downey Savings but, before the loan could close, Downey similarly cancelled the loan due to lending problems it was experiencing.  Subsequently, a broker from Downey informed Plaintiff that yet another lending institution was secured to fund Plaintiff's loan.

At that time, Plaintiff was getting ready to leave for a three-month business trip to Europe.  He alleges he was informed that the closing of the loan could not wait until he got back.  Accordingly, on August 15, 2008, while Plaintiff was in Europe, he received the loan documents from La Jolla Bank for a loan in the amount of $3,250,000.00, signed and notarized them, and mailed them back to La Jolla Bank.  Plaintiff alleges that at the time of execution, he was not provided with a copy of the loan documents he executed.  The escrow closed on August 21, 2008.

Plaintiff alleges that after he returned to the United States and received a copy of the loan documents, he discovered provisions that had not been part of the original loan agreement as represented to him.  Specifically, Plaintiff alleges that the following provisions stood out: (1) the interest rate on the loan was higher than was agreed upon during negotiations; (2) the loan was amortized, instead of being an interest only loan as agreed upon during negotiations; and (3) Plaintiff was charged $70,000.00 in loan commissions, even though it was agreed that all costs were to be paid by the lender.  (Compl. ¶ 14 [Doc. No. 1].)  When Plaintiff confronted La Jolla Bank about the discrepancies, he was allegedly told that nothing could be done to rectify the situation.  (*Id.*)  Plaintiff did not pursue the problem further at that time.  (*Id.* ¶ 20.)

In December 2009, Plaintiff requested loan modification from La Jolla Bank.  He alleges that representatives from La Jolla Bank's loan and loss mitigation departments represented to him that a permanent loan modification was being drawn up for him.  (*Id.* ¶ 21.)  On February 24, 2010, Plaintiff received a notice from OneWest, notifying him that La Jolla Bank was closed by the Office of Thrift Supervision and that the Federal Deposit Insurance Corporation ("FDIC") was named Receiver.  (*Id.* ¶ 22.)  The letter also alleged that the servicing of Plaintiff's mortgage loan was assigned to OneWest.  On March 1, 2010, Plaintiff alleges he received a letter from OneWest

alleging that ownership of his loan was transferred to OneWest.  (*Id.* ¶ 23.)  On April 19, 2010, Plaintiff alleges he was instructed by OneWest's Loan Modification Department to submit a new loan modification application.  (*Id.* ¶ 24.)  On May 21, 2010, Plaintiff alleges he was contacted by Mr. Roy Brown with OneWest's Loan Modification Department indicating that his application for loan modification was approved.  (*Id.* ¶ 25.)  Plaintiff alleges that he subsequently lost contact with Brown and that only after several weeks was he able to find out that the office Brown worked at had been "phased out" and that everyone there was fired.  (*Id.* ¶¶ 25, 26.)

On June 2010, Plaintiff alleges he contacted Ms. Brenda Diaz, OneWest's main Corporate Customer Experience Representative, and was informed that his loan was now being serviced by IndyMac.  (*Id.* ¶ 27.)  Plaintiff alleges that after speaking with Diaz, he was contacted by Mr. Jim Nolan and Mr. Dan Grenci, who asked him to resend a current loan modification application.  (*Id.*)  Subsequently, both Nolan and Grenci allegedly represented to Plaintiff that his application would be approved.  (*Id.* ¶¶ 28, 29.)  However, when he finally received the modification paperwork, Plaintiff alleges he discovered that the modification was only limited to six months.  (*Id.* ¶ 29.)  Plaintiff signed and executed the paperwork in September 2010.  (*Id.* ¶ 30.)

On September 9, 2010, after Plaintiff again inquired about a permanent loan modification, Mr. Mark Mosier asked him to submit a new loan modification application.  (*Id.* ¶ 32.)  After another period of waiting, Plaintiff was finally informed by Mr. Babu Abraham that Plaintiff would not be receiving a permanent loan modification because his loan exceed $1,000,000.00. Some time later, because of the rising monthly payments (amounting to $20,000 by September 2010), Plaintiff alleges that he was forced to sell the Property at a short sale to avoid default.

In support of their motion to dismiss, Defendants submit a number of exhibits they want the Court to take judicial notice of.  Defendants first submit a copy of the promissory note and the deed of trust in this case.  (Def. RJN, Exs. A, B [Doc. No. 3-1].)  They also submit a copy of the Purchase and Assumption Agreement ("P & A Agreement") between the FDIC, as Receiver for La Jolla Bank, and OneWest, dated February 19, 2010.  (*Id.*, Ex. C.)  Next, Defendants submit a Corporate Assignment of Deed of Trust, showing that on April 17, 2010, the FDIC assigned the deed of trust to the Property to OneWest.  (*Id.*, Ex. D.)  This assignment was recorded on April 29,

1   2010.  (*Id.*)  Finally, Defendants submit a copy of the Forbearance Agreement between Plaintiff

2   and IndyMac, dated October 18, 2010 and executed on November 24, 2010.  (*Id.*, Ex. E.)  The

3   Court can properly take judicial notice of each of these documents.  *See* Fed. R. Evid. 201(b)(2);

4   *see also Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("'[A]

5   court may take judicial notice of "matters of public record" without converting a motion to dismiss

6   into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable

7   dispute.'" (citation omitted)); *Lopez v. Wash. Mut. Bank, F.A.*, No. 1:09-CV-1838 AWI JLT, 2010

8   WL 1558938, at **3-4 (E.D. Cak. Apr. 19, 2010) (taking judicial notice of several recorded

9   documents, including a Purchase and Assumption Agreement between the FDIC and JPMorgan).

10         Plaintiff commenced this suit on August 18, 2011 in the Superior Court for the County of

11   San Diego.  Plaintiff's complaint alleges five causes of action: (1) fraud; (2) unfair business

12   practices; (3) violations of the Truth in Lending Act ("TILA"); (4) violations of the Real Estate

13   Settlement Procedures Act ("RESPA"); and (5) unjust enrichment.  On November 2, 2011,

14   Defendants removed the case to this Court.  Defendants filed their motion to dismiss on November

15   9, 2011.  Plaintiff filed an opposition on December 12, 2011, and Defendants replied on December

16   14, 2011.  The Court took this matter under submission pursuant to the Civil Local Rule 7.1(d)(1).

17                                          **LEGAL STANDARD**

18         A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests

19   the legal sufficiency of the pleadings.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To

20   survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

21   'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

22   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard

23   is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

24   defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a

25   defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement

26   to relief."'"  *Id.* (internal citation omitted).  "Dismissal can be based on the lack of a cognizable

27   legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri*

28   *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In ruling on a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The court, however, need not accept "legal conclusions" as true. *Iqbal*, 129 S. Ct. at 1949. Thus, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. It is also improper for the court to assume that plaintiff "can prove facts that it has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.

## DISCUSSION

Defendants premise their motion to dismiss on several grounds. First, they argue that to the extent Plaintiff's claims are based on conduct of La Jolla Bank, those claims should be dismissed because OneWest is not liable for the acts or omissions of La Jolla Bank pursuant to the P & A Agreement under which OneWest acquired La Jolla Bank assets from the FDIC. Second, Defendants argue MERS should be dismissed because there are no allegations made against it. Third, they argue that any claims for failure to modify Plaintiff's loan must be dismissed because there is no right to a loan modification. Fourth, Defendants assert that Plaintiff's fraud claim fails because Plaintiff did not allege it with the requisite specificity and because it is barred by the statute of limitations. Fifth, they assert that Plaintiff's TILA and RESPA claims fail because they occurred prior to Defendants acquiring the assets and because they are nonetheless time-barred. Sixth, Defendants assert that Plaintiff's unjust enrichment claim fails because it does not amount to an independent cause of action in California and because there is nothing unjust in them retaining Plaintiff's monthly payments pursuant to the deed of trust. Finally, they assert Plaintiff's unfair business practices claim fails due to the failure of all of his predicate claims.

## I.    Liability for conduct by La Jolla Bank

The Court first addresses Defendants' argument that Plaintiff cannot maintain any of the claims against OneWest because OneWest did not assume liability for borrower claims related to loans or commitments to lend made by La Jolla Bank when it entered into the P and A Agreement

1   with the FDIC regarding La Jolla Bank assets.

2   Under the Federal Deposit Insurance Act, 12 U.S.C. §§ 1811-1832(d), the FDIC may

3   accept appointment as a receiver for any closed insured depository institution. *See* 12 U.S.C. §

4   1821(c). As a receiver, "the FDIC . . . 'steps into the shoes' of the failed [financial institution]"

5   and operates as its successor. *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994) (citation

6   omitted); *see also* 12 U.S.C. § 1821(d)(2)(A)(i), (B)(i) (providing that when it becomes a receiver,

7   the FDIC succeeds to "all rights, titles, powers, and privileges of the insured depository

8   institution" and may "take over the assets of and operate the insured depository institution"). The

9   FDIC then has "broad powers to allocate assets and liabilities," such as through a P & A

10  Agreement. *West Park Assocs. v. Butterfield Sav. & Loan Ass'n*, 60 F.3d 1452, 1458-59 (9ᵗʰ Cir.

11  1995). Absent an express transfer of liability, no liability is transferred from a failed bank to an

12  assuming bank. *See Kennedy v. Mainland Sav. Ass'n*, 41 F.3d 986, 990-91 (5th Cir. 1994); *Payne*

13  *v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991); *Williams v. F.D.I.C.*, No. CIV

14  2:07-2418 WBS GGH, 2009 WL 5199237, at *2 (E.D. Cal. Dec. 23, 2009). As one court noted,

15  "[t]he reason for this rule is clear—'an assuming bank would rarely be inclined to enter a P & A

16  agreement with the FDIC knowing that it could be taking on unidentified liabilities of undefined

17  dimensions that could arise at some uncertain date in the future.'" *Williams*, 2009 WL 5199237, at

18  *5 (citation omitted).

19  In this case, the Office of Thrift Supervision closed La Jolla Bank on February 19, 2010,

20  and appointed the FDIC as receiver. OneWest entered into the P & A Agreement with the FDIC

21  regarding La Jolla Bank on the same day. (*See* Def. RJN, Ex. C.) Section 2.5(l) of the P & A

22  Agreement lists liabilities assumed by OneWest, but nowhere mentions that OneWest assumed any

23  liability to pay monetary relief associated with borrower claims arising out of the loans originated

24  by La Jolla Bank. Accordingly, because this liability was not expressly assumed by OneWest, it

25  remained with the FDIC and was not transferred to OneWest. *See Kennedy*, 41 F.3d at 990-91;

26  *Payne*, 924 F.2d at 111; *Williams*, 2009 WL 5199237, at *2.

27  Plaintiff's arguments to the contrary are not persuasive. Plaintiff argues that OneWest did

28  assume liability for all acts and omissions by La Jolla Bank, and points to the following provision

1  in the Corporate Assignment of Deed of Trust for support: "This assignment is made without

2  recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or

3  as Receiver."  (Def. RJN, Ex. D.)  Plaintiff, however, confuses the liability of FDIC to OneWest

4  and the liability of OneWest to borrowers of La Jolla Bank.  As Plaintiff correctly points out,

5  OneWest took the deed of trust from the FDIC with full knowledge that *it* had no recourse *against*

6  *FDIC*.  (*See* Def. RJN, Ex. D.)  Nothing in this assignment of the deed of trust, however, purports

7  to supplant the earlier P & A Agreement between the FDIC and OneWest governing the liabilities

8  *assumed by OneWest*.  Courts have uniformly held that absent an express transfer of liability, no

9  liability is transferred from a failed bank to an assuming bank.  *See Kennedy*, 41 F.3d at 990-91;

10 *Payne*, 924 F.2d at 111; *Williams*, 2009 WL 5199237, at *2.  Because Plaintiff fails to point to

11 anything in the P & A Agreement to defeat the presumption of no liability, the Court **GRANTS**

12 Defendants' motion in this regard and **DISMISSES WITH PREJUDICE** any claims against

13 OneWest that are premised on acts or omissions of La Jolla Bank.

14 **II.     Claims against MERS**

15        Defendants move to dismiss MERS as a defendant because apart from naming MERS as a

16 defendant, the complaint fails to allege any wrongdoing by MERS.  Plaintiff failed to oppose this

17 ground for dismissal in his opposition.  Moreover, a review of the complaint fails to reveal any

18 allegations of wrongdoing by MERS.  Accordingly, the Court **GRANTS** the motion to dismiss in

19 this regard and **DISMISSES** all of the causes of action against MERS.

20 **III.    First cause of action (fraud)**

21        Plaintiff's first cause of action alleges fraud against all Defendants.  According to Plaintiff,

22 Defendants perpetrated fraud in several different ways: (1) by misrepresenting to Plaintiff that the

23 loan was a conventional loan, despite the fact that it carried an adjustable rate; (2) by failing to

24 diligently and in good faith make a determination on Plaintiff's qualification for prime rate loan

25 with a fixed interest rate; (3) by fraudulently inducing Plaintiff into entering a loan Defendants

26 knew Plaintiff was not in a financial position to afford; (4) by misleading Plaintiff and engaging in

27 material omissions by failing to disclose to Plaintiff the fact that he was being sold an adjustable

28 rate mortgage product; and (5) by intentionally and knowingly selling a loan to Plaintiff that would

1  likely place him in a position of default and foreclosure.  (Compl. ¶ 36.)  Regardless of the truth of

2  these allegations, however, it is clear that all of them are directed at the conduct preceding and

3  accompanying the consummation of the subject loan, which occurred before OneWest acquired

4  any of the assets of La Jolla Bank pursuant to the P & A Agreement.  Accordingly, because

5  OneWest did not assume any liability for the acts or omissions of La Jolla Bank at the

6  consummation of the loan, the Court **DISMISSES** this cause of action **WITH PREJUDICE**.

7  **IV.    Third cause of action (TILA violations)**

8        Plaintiff's third cause of action alleges that Defendants violated TILA in the following

9  ways: (1) by failing to include and disclose certain charges in the finance charge shown on the

10  Truth in Lending statement as required by 15 U.S.C. § 1605 and Regulation Z, 12 C.F.R. §

11  226.18(d); (2) by disclosing a different charge than what was identified on the promissory note; (3)

12  by providing a variable rate loan, instead of a fixed rate one; and (4) by calculating the annual

13  percentage rate based upon improperly calculated and disclosed amounts in violation of TILA and

14  Regulation Z, 12 C.F.R. §§ 226.18(c), (d), and 226.22.  (Compl. ¶ 45, 46.)  As a remedy for failure

15  to provide the required disclosures, Plaintiff seeks rescission of the loan transaction.  (*Id.* ¶ 47.)

16  However, just as with the first cause of action, it is clear that all of these allegations cannot be

17  asserted against OneWest because they relate to conduct at the origination of the loan.

18        Moreover, it is clear from the face of the complaint that any TILA claim for rescission has

19  expired.  Section 1635 governs the borrower's right under TILA to rescind a "consumer credit

20  transaction . . . in which a security interest . . . is or will be retained or acquired in any property

21  which is used as the principal dwelling of the person to whom credit is extended."  15 U.S.C. §

22  1635(a); *see also* 12 C.F.R. § 226.15(a).  While the borrower's right of rescission must normally

23  be exercised within a three-day period, TILA extends that period to three years under certain

24  circumstances.  *See* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.15(a)(3).  Crucially, § 1635(f)

25  unambiguously states that the borrower's right of rescission "shall expire three years after the date

26  of consummation of the transaction or upon the sale of the property, whichever occurs first,

27  notwithstanding the fact that the information and forms required under this section or any other

28  disclosures required under this part have not been delivered" to the borrower.  In this case,

Plaintiff consummated the current loan transaction on August 15, 2008. (Def. RJN, Ex. A, B.) As such, Plaintiff's right of rescission expired three years after that, on August 15, 2011. *See* 15 U.S.C. § 1635(f). Plaintiff did not commence this suit until August 18, 2011. [Doc. No. 1.]

The expiration of the right of rescission not only bars Plaintiff's claim, but also deprives the Court of subject matter jurisdiction as to this claim. The Supreme Court has held that "§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). The Supreme Court stated:

> Section 1635(f) . . . takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy.

*Id.* at 417 (internal citations omitted). As the Ninth Circuit observed, § 1635(f) acts as a statute of repose, "depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period." *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002). In the present case, because Plaintiff did not attempt to rescind his transaction within the three-year limitation period, his right of rescission expired before he commenced this suit, and the Court lacks subject matter jurisdiction over this claim.[1] *See id.* at 1164-66.

Accordingly, because OneWest did not assume any liability for the acts or omissions of La Jolla Bank at the consummation of the loan, and because Plaintiff's TILA claim expired before he commenced this suit, the Court **DISMISSES** this cause of action **WITH PREJUDICE**.

## V.     Fourth cause of action (RESPA violations)

Plaintiff's fourth cause of action alleges Defendants violated RESPA, 12 U.S.C. § 2607, when they "accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed." (Compl. ¶ 50.) Because this cause of action does not

---

[1] To the extent Plaintiff alleges that he is entitled to equitable tolling on his TILA rescission claim, the Court notes that "[e]quitable tolling does not apply to rescission under . . . TILA." *See Taylor v. Money Store*, 42 Fed. App'x 932, 933 (9th Cir. 2002) (not for publication).

1  relate to the origination of the loan, the P & A Agreement is no bar to OneWest's liability.

2      Moreover, contrary to Defendants' arguments, this cause of action is not time barred.

3  Section 2614 provides that any action pursuant to § 2607 must be brought within one year "from

4  the date of the occurrence of the violation."  12 U.S.C. § 2614.  In this case, Plaintiff's complaint

5  alleges Defendants' *acceptance of charges* as the relevant "violation."  Because this violation was

6  presumably ongoing until Plaintiff sold the Property, and may still be on going, the Court cannot

7  say that this cause of action is time barred on the face of the complaint.  *See Cervantes v.*

8  *Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) ("A district court may dismiss

9  a claim '[i]f the running of the statute is apparent on the face of the complaint.'  However, a

10 district court may do so 'only if the assertions of the complaint, read with the required liberality,

11 would not permit the plaintiff to prove that the statute was tolled.'" (internal citations omitted)).

12     Nonetheless, the Court agrees with Defendants that this cause of action must be dismissed.

13 Section 2607 prohibits the acceptance of "any portion, split, or percentage of any charge made or

14 received for the rendering of a real estate settlement service in connection with a transaction

15 involving a federally related mortgage loan other than for services actually performed."  In this

16 case, Plaintiff merely states in a conclusory manner that the charges that OneWest accepted were

17 not for services actually performed, but fails to allege any facts in support.[2]  (*See* Compl. ¶¶ 50,

18 51.)  Accordingly, because Plaintiff failed to make more than conclusory allegations, the Court

19 **GRANTS** Defendants' motion to dismiss in this regard and **DISMISSES** Plaintiff's fourth cause

20 of action for RESPA violations **WITH LEAVE TO AMEND**.  *See Iqbal*, 129 S. Ct. at 1949 (the

21 court need not accept "legal conclusions" as true); *Twombly*, 550 U.S. at 555 ("[A] formulaic

22 recitation of the elements of a cause of action will not do.").

23 **VI.   Fifth cause of action (unjust enrichment)**

24     Plaintiff's fifth cause of action alleges unjust enrichment against Defendants.  However,

25 California does not recognize a *cause of action* for unjust enrichment.  *See, e.g.*, *Levine v. Blue*

---

26

27     [2] Elsewhere in the complaint, and in his opposition to Defendants' motion, Plaintiff alleges that
   OneWest accepted monthly payments without having the right to receive them.  (*See* Compl.  ¶ 23;
28 Pl. Opp., at 9-10 [Doc. No. 4].)  However, at least from the face of the complaint and the judicially
   noticeable documents, it appears that OneWest could properly accept the monthly payments from
   Plaintiff due to the valid assignment of the deed of trust to it by the FDIC.  (*See* Def. RJN, Exs. C, D.)

1   *Shield of Cal.*, 189 Cal. App. 4th 1117, 1138 (2010); *Durell v. Sharp Healthcare*, 183 Cal. App. 4th

2   1350, 1370 (2010) ("'[T]here is no cause of action in California for unjust enrichment.' Unjust

3   enrichment is synonymous with restitution." (internal citations omitted)).

4          Moreover, even when viewed in the form of restitution, "[t]he theory of unjust enrichment

5   requires one who acquires a benefit which may not justly be retained, to return either the thing or

6   its equivalent to the aggrieved party so as not to be unjustly enriched." *Otworth v. Southern Pac.*

7   *Transp. Co.*, 166 Cal. App. 3d 452, 460 (1985). Thus, unjust enrichment is inapplicable where the

8   defendant has merely obtained that to which it was entitled pursuant to a contract between the

9   parties. *See Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1541 (2003). In this case, there

10  are no allegations that OneWest received any benefit at Plaintiff's expense such that it was

11  unjustly enriched. Rather, in light of the valid assignment of the deed of trust, it appears that

12  OneWest was entitled to collect Plaintiff's monthly payments.[3] (*See* Def. RJN, Exs. C, D.)

13         Accordingly, the Court **GRANTS** the motion to dismiss in this regard and **DISMISSES**

14  Plaintiff's unjust enrichment claim **WITH LEAVE TO AMEND**.

**VII.    Second cause of action (unfair business practices)**

16         Finally, as a second cause of action, Plaintiff alleges that Defendants' conduct constitutes

17  unfair business practices in violation of California Business and Professions Code § 17200.

18         Section 17200 defines unfair competition as "any unlawful, unfair or fraudulent business

19  act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code

20  § 17200. Because the statute is written in the disjunctive, it prohibits three separate types of unfair

---

[3] Plaintiff cites to the California Commercial Code in arguing that Defendant was not a "holder in due course" of the note and therefore was not legally entitled to receive his monthly payments under the deed of trust. *See* Cal. Comm. Code §§ 3301, 3302, 3303. As a number of courts have held, however, the California Commercial Code does not govern non-judicial foreclosures, which are governed by the California Civil Code Sections 2924 through 2924i instead. *See Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 1191, 1201 (E.D. Cal. 2009) ("[S]ection 3301 [of the Commercial Code] reflects California's adoption of the Uniform Commercial Code, and does not govern non-judicial foreclosures, which is governed by California Civil Code section 2924."); *Gardner v. Am. Home Mortg. Serv., Inc.*, 691 F. Supp. 2d 1192, 1202 (E.D. Cal. 2010) ("California Civil Code sections 2924 through 2941 govern non-judicial foreclosures initiated under a deed of trust. 'California courts have consistently held that the Civil Code provisions "cover every aspect" of the foreclosure process and are "intended to be exhaustive."' Therefore, 'Plaintiff's reliance on Cal. Comm. Code § 3301 is misplaced' . . . ." (internal citations omitted)); *see also I. E. Assocs. v. Safeco Title Ins. Co.*, 39 Cal. 3d 281, 285-86 (1985) ("The statutory provisions regulating the nonjudicial foreclosure of deeds of trust are contained in sections 2924-2924i.").

competition: (1) *unlawful* acts or practices, (2) *unfair* acts or practices, and (3) *fraudulent* acts or practices.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

In this case, it appears Plaintiff alleges a cause of action only under the "unfair" prong of § 17200.  An "unfair" business practice is one that either "offends an established public policy" or is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 4th 509, 530 (1984), *abrogated on other grounds in Cel-Tech*, 20 Cal. 4th at 186-87 & n.12; *accord McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008).  In the present case, Plaintiff's second cause of action expressly relies on other alleged violations listed in the complaint to state a claim.  Because the Court has already dismissed every other cause of action, the Court similarly **DISMISSES** the second cause of action for unfair business practices **WITH LEAVE TO AMEND**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss.  First, the Court **dismisses with prejudice** all of the causes of action against Defendant MERS because Plaintiff failed to make any allegations as against that Defendant.  Second, the Court **dismisses** Plaintiff's first cause of action for fraud and third cause of action for TILA violations **with prejudice**.  Finally, the Court **dismisses** Plaintiff's fourth cause of action for RESPA violations, fifth cause of action for unjust enrichment, and second cause of action for unfair business practices **with leave to amend**.

If Plaintiff wishes to amend any of the causes of action that the Court dismissed with leave to amend, he may do so **within 21 days** of the filing of this Order.

**IT IS SO ORDERED.**

**Date:**  January 24, 2012

**IRMA E. GONZALEZ**
**United States District Judge**